## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  PX-24-041** |
| | : | |
| **LESTER MASSEY, JR.** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION TO SUPPRESS FRUITS OF SEARCHES CONDUCTED PURSUANT TO WARRANTS AND REQUEST FOR *FRANKS* HEARING

Defendant Lester Massey ("Mr. Massey"), by and through his counsel, John M. McKenna, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Motion to Suppress Fruits of Searches Conducted Pursuant to Warrants and Request for *Franks* Hearing.

### I.    Factual and Procedural Background

On February 8, 2024, the Government filed a one-count Indictment charging Mr. Massey with being a "felon in possession of ammunition," in violation of 18 U.S.C. § 922(g)(1).[1] (ECF No. 1.) The investigation into Mr. Massey began much earlier. Towards the end of 2021, ATF Special Agent Matthew J. Leonard began monitoring the public postings of Instagram and Facebook accounts allegedly

---

[1] As explained later, Mr. Massey is *not* a felon.

1

associated with Mr. Massey. On January 17, 2023, Agent Leonard applied for and received a warrant to search information associated with two Instagram accounts and one Facebook account associated with Mr. Massey. *See* Ex. A. In the warrant application, Agent Leonard represented that there was probable cause to believe the accounts contained evidence of violations of 18 U.S.C. § 922(g)(1). On the basis of information obtained through the execution of the search warrant for these three accounts, on July 31, 2023, ATF Special Agent Kelsey Wadsworth applied for and received a warrants authorizing the search of the following: (1) real-time cell site location and call detail records for target cell phone 240-837-3110 for a period of 30 days; (2) historical cell site and call detail information for target cell phone -3110 from August 1, 2021 through the date of the warrant; and (3) radio signals emitted by target cell phone -3110 for the purpose of communicating with cell phone towers as well as cell site simulator device employed by law enforcement. *See* Ex. B.

On the basis of information obtained through the execution of the warrants described above, on August 10, 2023, Agent Wadsworth applied for and received a warrant to search Mr. Massey's home at 6429 Livingston Road, Apartment 101 in Oxon Hill, Maryland. *See* Ex. C. The warrant authorized the search of the home and the *seizure* (but not search) of a host records and items, including all digital devices. Upon searching Mr. Massey's home on August 11, 2023, law enforcement allegedly recovered ammunition. While on the premises, law enforcement agents searched Mr.

Massey's digital devices without a warrant authorizing them to do so. Members of law enforcement also arrested and interrogated Mr. Massey. Later that day, Agent Wadsworth swore out an affidavit in support of a Criminal Complaint charging Mr. Massey with being a "[f]elon in [p]ossession of a [f]irearm and [a]mmunition," in violation of 18 U.S.C. § 922(g)(1). *See United States v. Massey*, No. 23-mj-2160, ECF No. 1. Mr. Massey was initially ordered detained pending indictment and trial on this charge. On September 15, 2023, Agent Wadsworth applied for and received a warrant to search information associated with the two Instagram accounts and one Facebook account with respect to which the January 2023 warrant had been issued. *See* Ex. D. The September 15 warrant, however, authorized law enforcement to search data associated with the accounts from January 17, 2023 through the date of the warrant.

On February 8, 2024, the Government filed the operative Indictment. On March 26, 2024, this Court ordered Mr. Massey's release pending trial, subject to conditions. No trial date has been set. At this time, Mr. Massey moves to suppress the fruits of these and all other warrants issued in connection with the investigation into him.

## II.   Legal Standard

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. It further commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. The Supreme Court has distilled three requirements for a warrant to issue under the Fourth Amendment:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will *aid in a particular apprehension or conviction for a particular offense*. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted) (emphasis added).

Probable cause exists when, "given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause is location specific: a judicial officer may not approve a warrant unless she has "a substantial basis for concluding that probable cause exist[s] to search a particular place for evidence of a specific crime." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020). Where an affidavit in support of a search warrant contains illegally obtained information, a reviewing court excises the tainted information and assesses whether "the affidavit's other averments set forth probable cause." *United States v. Gillenwaters*, 890 F.2d 679, 681 (4th Cir. 1989).

4

Furthermore, the "particularity requirement protects against a general, exploratory rummaging in a person's belongings, to the extent that a valid warrant leaves nothing to the discretion of the officers performing the search." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017).

### III.    The January 17, 2023 Social Media Search Warrant

The January 17, 2023 search warrant for two Instagram accounts and one Facebook account is facially invalid because it is overbroad. It authorized the search of essentially *all data* associated with the accounts with no showing of a reasonable probability that evidence of violations of 18 U.S.C. § 922(g)(1) would be found in each category. It therefore fails the particularity and nexus requirements of the Fourth Amendment. Additionally, the affidavit in support of the warrant does not establish probable cause to believe the "hotshotless" Instagram account would contain any evidence an alleged firearm offense. Moreover, after executing the warrant, law enforcement maintained possession of highly personal data that in no way constitutes evidence of a violation of 18 U.S.C. § 922(g)(1) or any other crime. More troublingly, in an effort to establish probable cause that the target accounts would contain evidence of violations of 18 U.S.C. § 922(g)(1), the affiant made materially false statements and omitted material information regarding Mr. Massey's criminal history. The fruits of this warrant must be suppressed.

### A.   The Warrant is Facially Invalid

The January 2023 social media warrant is facially invalid because it is overbroad. As the Fourth Circuit has recently explained,

> The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. This requirement stems from our Founders' disdain for "the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403 (2014); *see also Marron v. United States*, 275 U.S. 192, 195-96 (1927). By having to state with particularity the scope of the authorized search, a warrant prohibits the government from having "unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009); *see also Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *United States v. Blakeney*, 949 F.3d 851, 861 (4th Cir. 2020).

*United States v. Zelaya-Veliz*, 94 F.4th 321, 337 (4th Cir. 2024). "Probable cause to believe that a person is engaged in criminal activity is not *carte blanche* to search all their personal effects. There must also be some nexus between the suspected crime and the place to be searched—a substantial likelihood that evidence of a crime will be found *in a particular place*." *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (internal quotation omitted) (emphasis in original).

The affidavit in support of the search warrant purported to establish probable cause to believe that evidence of Mr. Massey's alleged violation of 18 U.S.C. § 922(g)(1) would be found within the subject accounts. The affidavit includes citations to several of the public postings from the Silverbackless Instagram account

and lester.massey.73 Facebook account that purport to show Mr. Massey's possession of firearms. No such information is provided with respect to the hotshotless Instagram account.[2] Attachment B to the affidavit authorized the seizure of a wide array of information associated with the subject accounts with *no explanation* as to how all of this information would be likely to reveal evidence of potential violations of 18 U.S.C. § 922(g)(1).

For example, the warrant authorizes the seizure of "*[a]ll content* (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from August 9, 2021 to Present[.]" Ex. A, Attachment B at 2 (emphasis added). It also authorizes the seizure of all communications sent from or received by the accounts from August 9, 2021 through the date of the warrant. Notwithstanding the sheer breadth of information authorized to be seized in the preceding paragraphs, the warrant further authorizes the seizure of all records of all interactions between the subject accounts and *any*

---

[2] Indeed, the affidavit sets forth no nexus between the hotshotless Instagram account and any possession of firearms. The affidavit therefore fails to establish a reasonable probability that evidence of violations of 18 U.S.C. § 922(g)(1) will be found in the contents of that account.

*other Facebook or Instagram accounts* from August 9, 2021 through the date of the warrant.

The affidavit in support of the warrant contains no information regarding any direct communications between Mr. Massey (or the subject accounts) and any other person regarding firearms. The affidavit simply does not establish a fair probability that evidence of the target crime will be found in the communication records of the subject accounts. In *Zelaya-Veliz*, 94 F.4th at 339, the Fourth Circuit affirmed a district court's denial of motion to suppress the fruits of Facebook search warrants where, although authorizing the search and seizure of large swaths of data, the affidavits in support of the warrants contained particularized information detailing the ways conspirators would use Facebook extensively to communicate with other co-conspirators and sex trafficking victims.

Here, there is no information contained in the affidavit to show that Mr. Massey ever communicated, whether through social media or otherwise, with any other person regarding the unlawful possession of firearms. That one is suspected of having possessed firearms after having sustained prior convictions in no way supports a logical inference that such a person communicated with others on social media about the unlawful possession of firearms. The warrant also contains no information suggesting that Mr. Massey was selling firearms. Indeed, the warrant purported to establish probable cause to search only for evidence of the unlawful

possession of firearms. In authorizing the search and seizure of such a wide array of data, the warrant is impermissibly broad. The good faith exception does not rescue the warrant because it is so lacking in indicia of probable cause and so facially deficient as to preclude reasonable reliance on it. Moreover, as explained below, the affidavit in support of the warrant contains materially false statements and material omissions that render the good faith exception inapplicable.

### B. Law Enforcement Executed the January 2023 Social Media Warrant in an Unreasonable Manner

After obtaining a vast trove of Mr. Massey's personal data contained in the three subject accounts, the Government violated the Fourth Amendment and Federal Rule of Criminal Procedure 41 by maintaining possession of data not authorized to be retained under the warrant and conducting several subsequent searches of that data. Federal Rule of Criminal Procedure 41(e)(2)(B) provides that "[a] warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." Although Rule 41 does not prescribe the method by which such later review must occur, "[i]n the [warrant] execution context, as elsewhere, Fourth Amendment reasonableness kicks in." *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). As noted above, the warrant authorized law enforcement to seize and search virtually all data associated with the accounts from August 9, 2021

through January 17, 2023. The warrant further authorized law enforcement to seize data contained in the warrant return that constitutes evidence of violations of 18 U.S.C. § 922(g)(1). On information and belief, after the execution of the search warrant, law enforcement maintained and indeed still maintains *all* records provided in response to the warrant, including those that are not evidence of the target offense. The retention of this information is patently unreasonable. The Government searched these records for several months after having received them. The Government's retention of this data and subsequent searches of it violate both Rule 41 and the Fourth Amendment. The Court should therefore suppress the fruits of these searches. As Mr. Massey has not yet received any reports detailing the manner by which the data was searched, Mr. Massey is not able at this time to provide further detail to the Court. Mr. Massey intends to file a reply in support of this argument at such time as the Government discloses reports and other information concerning the execution of this search warrant.

### C.    Mr. Massey is Entitled to a *Franks* Hearing with Respect to the January 2023 Social Media Warrant

To the extent the Court upholds the validity of the January 2023 social media search warrant, Mr. Massey requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court "held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)." "To obtain a *Franks* hearing, a

defendant must make a substantial preliminary showing that the affiant made (1) a false statement (2) knowingly and intentionally, or with reckless disregard for the truth that was (3) necessary to the finding of probable cause." *United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017). "Along with affirmative false statements, *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021). To obtain a *Franks* hearing on the basis of a material omission in a search warrant application, Mr. Massey must make a substantial preliminary showing that: "(1) law enforcement made an omission; (2) law enforcement made the omission knowingly and intentionally, or with reckless disregard for the truth, and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Id.* (citation omitted).

"If a *Franks* hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant must be voided and evidence or testimony gathered pursuant to it must be excluded. A warrant that violates *Franks* is not subject to the good-faith exception to the exclusionary rule[.]" *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal citations omitted).

The Constitution guarantees the right to possess and carry a handgun both inside and outside of the home. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1,

10 (2022). Accordingly, to establish probable cause to believe a firearms offense has occurred, a search warrant affidavit must set forth facts sufficient to show that what would otherwise be an exercise of a fundamental right is actually evidence of a criminal offense. The affidavit in support of the January 2023 social media search warrant purported to establish probable cause that evidence of Mr. Massey's alleged violation of 18 U.S.C. § 922(g)(1)[3] would be found in the data associated with the subject accounts. To establish a violation of § 922(g)(1), the Government must prove: (1) the defendant was previously convicted in any court of a crime punishable by imprisonment for a term exceeding one year, (2) the defendant knew he had been, (3) the defendant knowingly possessed the firearm, and (4) the possession was in or affecting commerce. While this code section is "colloquially—and ubiquitously—known as a 'felon-in-possession' prohibition," its application is more complicated. *United States v. Barronette*, 46 F.4th 177, 198 (4th Cir. 2022).

The term "crime punishable by imprisonment for a term exceeding one year" does not include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B). The affidavit in support of this warrant contains materially false statements concerning Mr. Massey's criminal history.

---

[3] In a Motion to Dismiss, Mr. Massey challenges the constitutionality of this statute both on its face and as applied to him.

The affidavit states that during the course of his investigation, Agent Leonard learned that Mr. Massey is "prohibited from possessing firearms due to the following convictions to which he was sentenced to a year or more in prison: [(1)] 2008 -- Possession with Intent to Distribute Controlled Dangerous Substance – sentenced to 18 months confinement (Maryland); [(2)] 2012 -- Possession of Controlled Dangerous Substances – sentenced to 48 months' imprisonment, 36 suspended, and 36 months of supervised release (Maryland)." Ex. A at 4. The information concerning the first conviction is plainly false. Mr. Massey has never been convicted of the Maryland state felony offense of possession with intent to distribute controlled dangerous substances. Indeed, he has never been convicted of *any felony at all*. With respect to the second conviction, the affiant omitted that the subject offense is a Maryland misdemeanor.

On March 13, 2009, Mr. Massey pled guilty in the Circuit Court for Prince George's County to the *misdemeanor* offense of conspiracy to distribute PCP.[4] *See, e.g.*, *Jones v. State*, 8 Md. App. 370, 375 (1969) ("conspiracy is a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. In Maryland it is a common law misdemeanor"); *see also Sequeira v. State*, 250 Md. App. 161, 203 (2021). On July 10, 2009, Mr. Massey

---

[4] Documents related to Mr. Massey's 2009 and 2012 misdemeanor convictions are attached as Exhibit E.

was sentenced to 3 years of incarceration with all suspended but one year to be served on home detention. Upon a finding of a violation of probation on March 9, 2012, Mr. Massey was sentenced to 18 months of incarceration. With respect to the 2012 conviction, the affidavit correctly states that Mr. Massey was convicted of the Maryland offense of simple possession of controlled dangerous substances and sentenced to serve 4 years of incarceration with all but 1 year suspended. The affidavit omitted that in Maryland, simple possession of controlled dangerous substances is a misdemeanor offense. *E.g.*, *Love v. Curry*, 104 Md. App. 684, 695 (1995).

Mr. Massey has more than established that the affiant made a false statement with respect to the first conviction. Mr. Massey sustained the conviction at issue in 2009, not 2008. More importantly, Mr. Massey was *not* convicted of possession with intent to distribute controlled dangerous substances. He was instead convicted of conspiracy to distribute a controlled dangerous substance. Mr. Massey was not initially sentenced to 18 months of imprisonment. He was sentenced to 3 years with all suspended but 1 year to be served on home detention. He received a sentence of 18 months of incarceration following a finding of a violation of probation. At a minimum, the affiant acted with reckless disregard for the truth of these statements. Information concerning Mr. Massey's criminal history is publicly available through the office of the Clerk of the Circuit Court for Prince George's County. As a sworn

ATF agent, the affiant has access to criminal history databases that detail Mr. Massey's criminal history. The affidavit was not prepared in haste. Law enforcement had been watching the subject accounts and building an investigation into Mr. Massey. Indeed, the affiant represented in the affidavit that he had consulted Maryland Motor Vehicle Administration records concerning Mr. Massey. There is no excuse for this blatant misrepresentation of Mr. Massey's criminal history. Agent Leonard has been with the ATF since 2014. He is based in Maryland. It is reasonable to assume that he has familiarity with Maryland state offenses.

As to the third *Franks* prong, these false statements were indeed necessary to the finding of probable cause. As noted above, in Maryland, possession with intent to distribute controlled dangerous substances is a felony offense. The affiant represented that Mr. Massey had been sentenced to 18 months of incarceration for this nonexistent conviction, a term that exceeds one year. This false information created a reasonable probability to believe that Mr. Massey was a convicted felon and that he knew he had been convicted of a felony punishable by more than one year of imprisonment. Without the false information, the judicial officer was left to consider one prior conviction, a conviction for the misdemeanor offense of possession of controlled dangerous substances. Mr. Massey did not serve in excess of two years for that conviction. He was sentenced to only one year of active incarceration. Without the false information, there is simply *not* probable cause to

believe that Mr. Massey knew that he had been convicted of a "crime punishable by imprisonment for a term exceeding one year" within the meaning of § 921(a)(20)(B) at the time of the social media postings. This Court should therefore grant Mr. Massey a *Franks* hearing.

With respect to the second conviction listed in the affidavit, the affiant omitted that Maryland simple possession of controlled dangerous substances is a misdemeanor offense. Where, as here, prior criminal history is essential to a finding of probable cause, it is incumbent upon law enforcement to include complete and accurate information on the subject. Excising the false statements regarding the first putative conviction, the reviewing judge was left with information concerning one prior conviction. The affiant, at a minimum, recklessly omitted that the offense at issue was a state-level misdemeanor. Had this information been included in the affidavit, then, in the absence of the false statements concerning the first conviction, the affidavit would not have established probable cause to believe evidence of a violation of § 922(g)(1) would be found in the subject accounts. There is simply no evidence presented in the affidavit to suggest that Mr. Massey knew he was among the class of people prohibited under federal law from possessing firearms where he was convicted only of a state misdemeanor and sentenced to an executed term of incarceration well below two years. *Cf. United States v. Barronette*, 46 F.4th 177, 199 (4th Cir. 2022). Again, the affiant had the time and ability to ensure the

presentation of accurate information. For these reasons, too, the Court should grant Mr. Massey a *Franks* hearing.

## IV.     The July 31, 2023 Warrants

The Court should also suppress the fruits of searches conducted pursuant to the July 31, 2023 warrants for the search and seizure of information related to the -3110 phone number. First, the warrants rely on the unconstitutional search of Mr. Massey's social media account conducted pursuant to the January 2023 warrant. *See* Ex. B at 13-17. Any material obtained pursuant to the July 31, 2023 warrants is therefore "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007). Second, the warrants rely on the presumptively unconstitutional warrantless search and seizure of Mr. Massey by members of the Forest Heights Police Department during a traffic stop on May 16, 2023.[5] For that reason too, any information obtained through the execution of the July 31, 2023 search warrants is fruit of the poisonous tree. The warrants are overbroad and do not sufficiently establish a nexus between alleged violations of § 922(g)(1) and the vast array of data sought to be obtained.

---

[5] Mr. Massey has moved to suppress the fruits of this warrantless search and seizure, including any statements allegedly made by him on the date in question. Mr. Massey has not received in discovery any documents or media files related to this event.

Additionally, the affidavit in support of the warrants purported to establish probable cause to believe evidence of Mr. Massey's alleged violation of § 922(g)(1) would be found in the data to be searched. However, the affidavit contains the same false statements and material omissions regarding Mr. Massey's criminal history as described with respect to the January 2023 social media warrant. Therefore, Mr. Massey is also entitled to a *Franks* hearing with respect to the July 31, 2023 warrants.

## V.   The Residential Search Warrant

The Court should also suppress the fruits of the warrant authorizing the search of Mr. Massey's residence. First, the warrant contains the same false statements and material omissions regarding Mr. Massey's criminal history, notwithstanding the fact that law enforcement had now been investigating Mr. Massey for an even longer period of time. Mr. Massey is therefore entitled to a *Franks* hearing on this warrant. Second, the affidavit in support of the warrant relies on the unlawful search of Mr. Massey's social media accounts conducted pursuant to the January 17, 2023 warrant. Third, the warrant relies on the presumptively unconstitutional warrantless search and seizure of Mr. Massey during a traffic stop on May 16, 2023. Fourth, the warrant relies on the unconstitutional search and seizure of data associated with Mr. Massey's -3110 phone. Fifth, the affidavit in support of the warrant does not contain information sufficient to establish any nexus between alleged violations of § 922(g)(1) and Mr. Massey's home. Indeed, the affidavit alleges that Mr. Massey

directed an individual to an address that was *not his home address* in order to facilitate an alleged sale of a firearm. Sixth, the warrant is overbroad. The warrant authorized law enforcement to seize a seemingly endless list of records and items from Mr. Massey's home with no explanation as to how evidence of alleged violations of § 922(g)(1) would be found there. Seventh, law enforcement exceeded the scope of the warrant by searching *the contents* of Mr. Massey's cell phones during the execution of the search warrant. For these reasons, the fruits of the search conducted pursuant to this warrant should be suppressed.

## VI.    September 2023 Social Media Search Warrant

The Court should also suppress the fruits of the September 15, 2023 search warrant for information related to Mr. Massey's social media accounts. First, the search warrant relies on the unconstitutional search of information related to the -3110 phone number, the unconstitutional search of Mr. Massey's home, and the unconstitutional prior search of information associated with the subject social media accounts. The fruit of the poisonous tree doctrines therefore applies. Second, the affidavit omits material information regarding Mr. Massey's criminal history. While the affidavit does not contain the indisputably false statement that Mr. Massey had been convicted of the felony of possession with intent to distribute controlled dangerous substances, the affidavit omits that the sole prior conviction referenced relates to a misdemeanor offense. For the reasons argued above, this material

omission entitles Mr. Massey to a *Franks* hearing on this warrant. Third, much like the prior social media warrant, this warrant is overbroad. Law enforcement executed the warrant in a unreasonable and unconstitutional manner. Law enforcement has maintained possession of a trove of Mr. Massey's sensitive personal data, including that which falls outside of the scope of the information permitted to be retained under the warrant.

## VII.    Cell Phone Warrants

Mr. Massey has not yet received copies of any warrants authorizing the search of his cell phones. Mr. Massey intends to supplement this motion once he has had an opportunity to obtain and review these warrants.

## CONCLUSION

For these reasons, the Court should suppress the fruits of searches conducted pursuant to the warrants issued in this case. The Court should also grant Mr. Massey a *Franks* hearing.

Respectfully submitted,

_____/s/_____
John M. McKenna
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this June 3, 2024, the foregoing was served on all parties via ECF.


_____/s/_____
John M. McKenna