**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA**

    **v.**                             **Criminal No. PX-23-346**

**LESTER MASSEY, JR.,**

    **Defendant**

**\*\*\*\*\*\*\***

**GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO
SUPPRESS FRUITS OF SEARCH WARRANTS, STATEMENTS, AND FRUITS OF
OTHER SEARCHES, FOR 404(B) EVIDENCE, AND TO DISMISS THE INDICTMENT**

<u>Table of Contents</u>

| | | |
|---|---|---|
| I. | BACKGROUND | 2 |
| II. | CHALLENGES TO THE JANUARY 17, 2023, SOCIAL MEDIA WARRANT | 4 |
| III. | CHALLENGES TO THE JULY 31, 2023, TELEPHONE WARRANTS | 19 |
| IV. | CHALLENGES TO THE AUGUST 10, 2023, RESIDENTIAL WARRANT | 22 |
| V. | CHALLENGES TO THE SEPTEMBER 15, 2023 SOCIAL MEDIA WARRANT | 24 |
| VI. | DEFENDANT'S MOTION TO SUPRESS STATEMENTS | 26 |
| VII. | DEFENDANT'S MOTION TO SUPRESS FRUITS OF WARRANTLESS SEARCHES AND SEIZURES | 29 |
| VIII. | DEFENDANT'S MOTION TO DISMISS THE | |
| IX. | INDICTMENT UNDER THE SECOND AMENDMENT | 30 |
| X. | RESPONSE REGARDING REQUEST FOR NOTICE OF RULE 404(b) EVIDENCE | 33 |
| XI. | CONCLUSION | 34 |

The United States of America, by and through undersigned counsel, respectfully submits the following response in opposition to the motions to suppress fruits of search warrants, statements, and fruits of other searches, for 404(b) evidence, and to dismiss the indictment ("Motions") submitted by Lester Massey, Jr. ("the Defendant"). ECF Nos. 16, 17, 18, 19, and 20. First, the Defendant challenges the validity of four of the warrants executed in this investigation on several grounds and requests a *Franks* hearing for each, based on allegations of reliance on false and omitted statements. ECF No. 16. However, each of the warrants was amply supported

by probable cause and was lawfully executed, and no *Franks* hearing is appropriate.  Second, the

Defendant alleges that he was subjected to warrantless searches and seizures through searches of

his cellphones on August 11, 2023, and during a May 16, 2023, traffic stop.  ECF No. 17.

However, the search of the Defendant's cell phones was authorized by the August 10, 2023,

warrant and the Defendant was not the subject of a warrantless search and seizure during the May

16, 2023, traffic stop—a traffic stop which was entirely unrelated to this case.  Third, the Defendant

moves to suppress the statements he made to law enforcement during that prior May 16, 2023,

traffic stop and during the August 11, 2023, search of the Defendant's home.  ECF No. 18.  As to

May 16, 2023, the Government is not planning to rely on the Defendant's biographical statements

regarding his telephone number or place of residence during that traffic stop unrelated to this case

(which were not made in violation of the Defendant's Constitutional rights).  As to August 11,

2023, because law enforcement properly advised the Defendant of his *Miranda* rights, and the

Defendant voluntarily waived them, those statements are admissible at trial.  Lastly, the Defendant

moved to dismiss the indictment on the grounds that 18 U.S.C. § 922(g)(1) is unconstitutional as

applied to him.[1]  ECF No. 19.  As discussed below, however, Section 922(g)(1) is constitutional

both facially and as applied to the Defendant.  Accordingly, all of the Motions should be denied.

## BACKGROUND

On February 8, 2024, the Defendant was charged in a single count indictment for violating

18 U.S.C. § 922(g)(1) for his unlawful possession of approximately 243 rounds of ammunitions

on August 11, 2023, after having been previously convicted of a crime punishable by

---

[1] The Defendant initially argued that Section 922(g)(1) was facially unconstitutional but then
acknowledged that the Fourth Circuit recently found the statute was constitutional on its face in
*United States v. Canada*, No. 22-4519, 2024 U.S. App. LEXIS 13271 (4th Cir. June 3, 2024).  *See*
ECF No. 22.

imprisonment for a term exceeding one year.  ECF No. 1.  This charge was based on the results of the execution of the search warrant on the Defendant's residence on that date, during which law enforcement recovered, among other items: (i) approximately 163 rounds of 9 mm ammunition, (ii) approximately 52 rounds of .223 caliber ammunition, (iii) approximately 28 rounds of .40 caliber ammunition, (iv) a 5.56 NATO caliber, AR-type receiver, and (v) approximately 17.39 grams of methamphetamine hydrochloride, (vi) approximately .274 grams of cocaine base, (vi) approximately 55 clear plastic capsules, (vii) empty gelatin pill capsules, and (viii) two of the Defendant's cellular phones.

Based on the recovered items, on August 11, 2023, the Defendant was arrested on a criminal complaint.  (*See* Case No. 23-mj-2160-TJS, ECF Nos. 1 and 3.) The criminal complaint's supporting affidavit detailed the Defendant's trafficking of firearms while he was prohibited by at least one prior felony conviction from possessing them, the Defendant's social media posts documenting his recent and regular use of firearms as a prohibited person, and the items recovered during the execution of the search warrant at his residence.  (*See* Case No. 23-mj-2160-TJS, ECF No. 1-1.)

During the investigation into the Defendant, several federal search warrants were granted which the Defendant challenges on several grounds.  ECF No. 16.  The warrants at issue are:

**January 17, 2023 Social Media Warrant**

On or about January 17, 2023, the Honorable Ajmel A. Quereshi, United States Magistrate Judge, issued a warrant authorizing law enforcement to obtain stored information related to the Defendant's two Instagram accounts, **silverbackless** and **hotshotless**, and a Facebook account from Meta, **lester.massey.73**.  The supporting affidavit can be found at ECF No. 16-1.

**July 31, 2023 Warrants**

On or about July 31, 2023 the Honorable Timothy J. Sullivan, United States Magistrate Judge, issued warrants authorizing law enforcement to obtain real time location data associated with the Defendant's telephone bearing call number (240) 837-3110 ("-3110 phone"), historic location data associated with the -3110 phone, and the use of a cell site simulator to locate the -3110 phone.  The supporting affidavit can be found at ECF No. 16-2.

**August 10, 2023 Residential Warrant**

On or about August 10, 2023, Judge Sullivan further issued a search warrant for the Defendant's residence in Oxon Hill, Maryland (the residential search warrant mentioned above), covering, among other items, the Defendant's two cell phones.  The supporting affidavit can be found at ECF No. 16-3.

**September 15, 2023, Social Media Warrant**

On or about September 15, 2023, Judge Sullivan issued a warrant authorizing law enforcement to obtain additional stored information related to the Defendant's two Instagram accounts, **silverbackless** and **hotshotless**, and a Facebook account from Meta, **lester.massey.73**. The supporting affidavit can be found at ECF No. 16-4.

<u>**CHALLENGES TO THE JANUARY 17, 2023 SOCIAL MEDIA WARRANT**</u>

The Defendant moves to suppress the fruits of the above-referenced January 17, 2023 Social Media Warrant, arguing that: (1) the warrant and resulting search were overly broad; (2) the supporting affidavit failed to establish probable cause; and (3) the execution of the warrant was unreasonable. *See* ECF No. 16 at 5-10. The Defendant further moves this Court to order a *Franks* hearing regarding two statements regarding the Defendant's criminal history contained in the warrant.

Each of the Defendant's arguments is meritless. The request for a *Frank* hearing is unsupported and should also be denied.

## I. The Affidavit and Warrant Were Reasonably Tailored to the Items and Locations to be Searched.

The Defendant has asserted the warrant and resulting search were overly broad. However, the Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006). The Fourth Circuit has been mindful to not create additional obligations that would require a "hypertechnical" scrutiny of the terms of the warrant. *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009); *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010); *United States v. Blakeney*, 949 F.3d 851, 862 (4th Cir. 2020).

In *United States v. Cobb*, 970 F.3d 319 (4th Cir. 2020), the Court noted "[w]e have long recognized that '[a] warrant need not—and in most cases, cannot—scrupulously list and delineate each and every item to be seized. Frequently, it is simply impossible for law enforcement officers to know in advance exactly what . . . records the defendant maintains or how the case against him will unfold.'" *Id.* at __ (quoting *Phillips*, 588 F.3d at 225). The Court explained, "the test for the necessary particularity is a pragmatic one: The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. There is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized." *Cobb*, 970 F.3d at 327.

In *Cobb*, the appellant was convicted of possession of child pornography after evidence obtained from a search warrant related to a murder investigation uncovered evidence of child pornography within the appellant's computer. *Id.* at 325. During a jail call conversation with his father, the appellant referenced things on his computer needing "to be cleaned up before anyone

sees them." *Id*. at 327.  The Court held that a search warrant seeking the internal contents of the laptop computer for "material associated with the homicide of [the victim]" on the date of the homicide, in a home shared by the appellant and the victim "specified as much as it reasonably could have." *Id*.

Here, the January 17 Social Media Warrant specified the places to be searched and the items to be seized in reasonable detail. The affidavit, which serves as the basis for much of the Defendant's argument, provided ample evidence to support the requests made in the warrant, both in the narrative and the corresponding attachments. The information to be disclosed by the social media provider was reasonably described in each attachment.

First, the warrant was limited to three social media accounts for evidence of the Defendant's violations of 18 U.S.C. § 922(g)(1) from August 9, 2021, to the date of warrant execution by the provider, each of which were supported by probable cause.  The affidavit was replete with examples of the Defendant's unlawful possession of several firearms that were publicly available.  It included screenshots of the accounts that memorialized this conduct and that his possession of firearms was a recent as January 1, 2023 and extended back as far as August 9, 2021.  ECF No. 16-1, at 8-13.  It also demonstrated how the Defendant had linked the accounts to share posts across accounts and directing followers of one account to follow the other.  ECF No. 16-1 at 6-7.

Second, probable cause to search for "fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 922(g)(1), those violations involving <u>Lester Massey</u> and occurring on or after August 9, 2021" was noted in Attachment B.

The warrant described with particularity the apparent criminal conduct of the Defendant and how the Defendant advertised this conduct to the public on social media via two of the three

accounts.[2]  The fact that the Defendant was posting such a volume of evidence of his repeated violations of Section 922(g)(1) reasonably suggested that evidence related to these violations could be located in the data returned.

Accordingly, the Court should deny the Defendant's motion to suppress the fruits of the challenged warrants on these grounds.

## II.     The January 17, 2023 Social Media Warrant Was Supported by Probable Cause.

The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983), adopted a "totality of the circumstances" test to be applied when determining probable cause. The Court noted

> The task of the issuing magistrate is simply to make a practical, common sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing magistrate is simply to ensure that the magistrate had a substantial basis for concluding the probable cause existed.

---

[2] The Defendant asserts that the warrant establishes no nexus between the Defendant's hotshotless Instagram account and the Defendant's possession of firearms.  ECF No. 16 at 7 and n.2.  But this claim fails. Regarding this account, the warrant established: (1) that the Defendant was the user of this account; (2) that the Defendant had linked his social media accounts such that content was repeatedly posted to multiple accounts; (3) that on the Defendant's silverbackless account the Defendant had included a link to the hotshotless account as the Defendant's business account; and (4) that the Defendant had directed followers of his hotshotless account to follow his silverbackless account.  ECF No. 16-1 at 6-7.

*Gates*, 462 U.S. at 238-39.  Probable cause means far "less than evidence which would justify condemnation or conviction," *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotation marks and citation omitted), and even less than that required by the preponderance-of-the-evidence standard.  *See Gates*, 462 U.S. at 235; *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) ("[T]he probable cause standard does not require that the officer's belief be more likely true than false."); *United States v. Gondres-Medrano*, 3 F.4th 708 (4th Cir. 2021) ("Probable cause has long been understood to encompass circumstances that, while less than a preponderance, warrant suspicion.") (internal citations and quotation marks omitted).

Implicitly, a probable cause determination for a magistrate judge is rooted in reasonableness.  *Fernandez v. California*, 571 U.S. 292, 298 (2014).  The Fourth Circuit has noted that a reasonableness determination is a multifactor consideration.  *See United States v. Lyles*, 910 F.3d 787, 795 (4th Cir. 2018) ("Reasonableness has many dimensions."); *United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021) ("And it is the combined circumstances, and not each circumstance separately, by which we must evaluate probable cause.") (internal quotation marks omitted).  "Reasonableness does not, by definition, entail perfection."  *Phillips*, 588 F.3d at 227.

The statement of probable cause need not be written with "[t]echnical elaborate specificity," *United States v. Ventresca*, 380 U.S. 102, 108 (1965), and a "magistrate has the authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant," *United States v. Bynum*, 293 F.3d 192, 197 (4th Cir. 2002).

The Fourth Circuit has held that authorization to conduct a search and seizure requires "a substantial likelihood that evidence of a crime will be found in a particular place."  *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011).  "[T]he nexus between the place to be searched and

the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010) (quoting *United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988)). The Fourth Circuit has, however, "long . . . held that an affidavit need not directly link the evidence sought with the place to be searched." *United States v. Jones*, 942 F.3d 634, 639 (4th Cir. 2019); *see also United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (holding that warrants should be upheld "even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought" to the place to be searched).

In evaluating whether a search warrant is supported by probable cause, this Court—as a reviewing court—does not conduct a *de novo* assessment. Rather, it determines whether the issuing judicial officer had a "substantial basis" to conclude that probable cause existed. *See United States v. Abramski*, 706 F.3d 307, 313-14 (4th Cir. 2013). And "[b]ecause probable cause is evaluated through a totality-of-the-circumstances analysis rooted in common sense," a reviewing court should give "great deference" to an issuing judicial officer's decision to issue a warrant based on the facts presented. *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011); *Gates*, 462 U.S. at 236; *Jones*, 942 F.3d at 638; *Richardson*, 607 F.3d at 369.

This warrant was amply supported by probable cause. The warrant set out that the Defendant was prohibited from possessing firearms or ammunition based on at least one past conviction.[3] ECF No. 16-1 at 4. It established that the Defendant was the person utilizing these social media accounts and how he (the Defendant) had interwoven the three accounts. ECF No. 16-1 at 4-7. It then described the basis for the affiant's ability to identify firearms via video, before describing seven public videos posted to the social media accounts that showed the Defendant

---

[3] A discussion of this criminal history appears below.

firing a number of firearms.  ECF No. 16-1 at 7-10.  These videos (and the screenshots included in the warrant) include, but are not limited to, depictions of the Defendant firing a Beretta handgun out of the window of a moving vehicle, the Defendant firing an ArmaLite Rifle-type semi-automatic pistol, and the Defendant shooting a Glock pistol equipped with a silencer.  *Id.*

Given all of the information regarding the Defendant, his recurring use of firearms, and his use of social media to broadcast evidence of his criminal activity, it is more than reasonable to conclude that probable cause had been established for the requested warrant.

**III.    The Execution of the January 17, 2023 Social Media Warrant Fell Within the Scope of the Authority Granted by the Warrant.**

The Government's execution of the January 17, 2023 Social Media Warrant, including its use of the use of Federal Rule of Criminal Procedure 41's two-step procedure, was reasonable under the Fourth Amendment.

Neither the search procedure language within the warrant, nor Rule 41, nor the Fourth Amendment impose any time limitation on the Government's forensic examination. The Government may retain a seized computer and examine its contents in a careful and deliberate manner, subject only to the reasonableness requirement of the Fourth Amendment, and the reasonableness of the Government's search is determined primarily by whether probable cause for the search has dissipated.  *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005).

Courts have upheld forensic analyses that began months after investigators acquire a computer or data.  *See*, *e.g.*, *United States v. Burns*, 2008 WL 4542990, at *8-9 (N.D. Ill. Apr. 29, 2008) (ten-month delay); *United States v. Gorrell*, 360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004) (ten-month delay).  In assessing the reasonableness of time for a forensic analysis, courts recognize that analysis of electronic data is a difficult and time-consuming process.

Pursuant to this warrant, the social media provider began producing responsive returns on or about January 30, 2023, to Special Agent Leonard.  The following day, Special Agent Leonard was formally re-assigned to a previously planned detail at ATF's Firearms Operations Division. While formally reassigned, Special Agent Leonard continued to work on this investigation for several weeks as it was transferred to the next case agent, ATF Special Agent Szakolczai.  This work included briefing Special Agent Szakolczai, transferring the case materials, and beginning to review the approximately 20,000 pages of the social media returns.[4]  This initial review identified responsive chats and photographs in the silverbackless and lester.massey.73 reports demonstrating the Defendant's unlawful possession of firearms and, because of relatively small size, a determination by Special Agent Leonard that the hotshotless account did not contain responsive evidence.  The hotshotless account was set aside and not searched again.  Special Agent Szakolczai received the three social media returns from Special Agent Leonard and Special Agent Leonard's verbal guidance regarding what responsive materials Special Agent Leonard had identified thus far.  Special Agent Szakolczai then continued to manually search the approximately 20,000 pages of the social media returns and utilizing key word searches.   Special Agent Szakolczai's review was substantially completed by March 2023 and did not extend past April 6, 2023.[5]  Given the volume of the responsive social media reports, their formatting which required key-word searches and navigation, the reassignment of the investigation during the time of the search, and the other investigative and professional responsibilities of Special Agent Leonard and Special Agent Szakolczai at the time, this search was reasonable under the Fourth Amendment.

---

[4] The .pdf report of the silverbackless account produced by the social media provider is approximately 9,520 pages, the lester.massey.73 report is approximately 9,503 pages, and the hotshotless report is approximately 326 pages.

[5] This investigation was later reassigned again in May 2023.  Special Agent Wadsworth has served as the principal case agent since then.

**IV.    The Court Should Deny the Defendant's Motion for a *Franks* Hearing.**

A defendant is "generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).   In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme held that in certain "narrowly defined circumstances," a search warrant affidavit can be challenged.  *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).  In *Franks*, the Supreme Court recognized a "strong 'presumption of validity with respect to the affidavit supporting the search warrant,' and therefore fashioned a rule of "limited scope." *Id.* (quoting *Franks*, 438 U.S. at 167, 171).  To fit within this narrowly defined exception, a defendant must make a "substantial preliminary showing" that (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (citations omitted). Thus, the Fourth Circuit has explained that the burden a Defendant must meet to obtain a hearing is a heavy one. *See United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994) ("With the Defendant's burden in attacking a search authorized by a facially valid warrant so heavy, so too is his burden in establishing the need for a hearing on the issue.").

Regarding the first step of the *Franks* analysis, falsity, a defendant must set forth more than a conclusory showing of a false statement, and must include "a detailed offer of proof." *Colkley*, 899 F.2d at 300 (citing *Franks*, 438 U.S. at 171).  The defendant cannot simply allege a "subjective disagreement" with how an affiant described the facts in an affidavit.  *Moody*, 931 F.3d at 370.

Under the second step, intentionality, the defendant must provide facts to support his assertion that law enforcement made false statements or omitted information in the affidavit.  *Id.* at 371.  This step requires proof of the affiant's "intent to mislead, or . . . reckless disregard for

12

whether the statements would mislead, the magistrate." *Id.* "An innocent or even negligent mistake by [an] officer will not suffice." *Id.* (citing *Franks*, 438 U.S. at 170). There is a "high standard for establishing reckless disregard in this context." *United States v. Shaw*, No. CV 3:21CR144 (DJN), 2022 WL 1143524, at *3-5 (E.D. Va. Apr. 18, 2022). The Fourth Circuit explained:

> [R]eckless disregard in the *Franks* context requires a showing that the affiant personally recognized the risk of making the affidavit misleading. What the officer-affiant *should* have known does not matter if he did not *in fact* know. Reckless disregard is a subjective inquiry; it is not negligence nor even gross negligence. To establish a *Franks* violation, the particular affiant must have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk.

*United States v. Pulley*, 987 F.3d 370, 377 (4th Cir. 2021) (internal citations omitted).

"When a defendant relies on an omission, this heavy burden is even harder to meet." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021). The Fourth Circuit cautioned that "the affirmative inclusion of false information in an affidavit" would more likely invalidate a warrant than would an omission, for "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Colkley*, 899 F.2d at 300-01. Thus, to satisfy the second step of *Franks* as it applies omissions, a defendant must also show that the omissions were "designed to mislead" or were made with "reckless disregard of whether they would mislead," the magistrate. *Id.* at 301 (citing *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). "An officer acts with reckless disregard when she fails to inform the magistrate of facts she subjectively knew would negate probable cause. And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality." *Haas*, 986 F.3d at 475.

Finally, under the third step of the *Franks* analysis, materiality, a defendant must demonstrate that the allegedly false or omitted information was necessary for the existence of

probable cause.  *Franks*, 438 U.S. at 171-72.  In other words, even if a defendant satisfies the first two steps, his request for a *Franks* hearing must be denied if there "remains sufficient content in the warrant affidavit to support a finding of probable cause" after the court sets aside the "material that is the subject of the alleged falsity or reckless disregard."  *Id*.  In making this determination, courts consider the totality of the circumstances.  *Colkley*, 899 F.2d at 301.

If the defendant fails to furnish a "substantial preliminary showing" that satisfies each of these three steps, the defendant is not entitled to a *Franks* hearing.  *See Haas*, 986 F.3d at 474.

The Defendant argues that there is both a false statement and omission in the search warrant affidavit.  First, the Defendant argues that Special Agent Leonard misstated the Defendant's criminal history regarding his prior 2009[6] conviction for Conspiracy to Distribute CDS.  Second, the Defendant argues that the search warrant affidavit omitted information about the severity of the Defendant's 2012 conviction for Possession of Controlled Dangerous Substances.  These arguments fail under a *Franks* analysis.  The warrant did incorrectly state the date and charge of conviction for one of the Defendant's prior convictions, but the Defendant was prohibited from possessing a firearm and ammunition under both convictions, on either date, and he was prohibited regardless of whether they were Maryland felonies or misdemeanors.  Also, the Defendant offers no proffer that either the inaccurate statement or alleged omission were made intentionally or with reckless disregard for the truth—nor could he.  And neither the alleged false statement or omission was material to the determination of probable cause.

      a.   *The alleged false statement about the Defendant's 2009 conviction does not meet the requirements of* Franks.

---

[6] As discussed in greater detail below, the warrant incorrectly identified this conviction as occurring in 2008.

First, the Defendant correctly identifies that the date and charge of conviction are misstated in the warrant. As the Defendant acknowledges and as confirmed in the Defendant's certified conviction document, on July 10, 2009, the Defendant was sentenced to three years imprisonment, all but one year suspended, and three years of probation for conspiracy to distribute phencyclidine under Count 1 of the amended indictment. *See* ECF No. 16-5 at 7-14.

However, this was not the information Special Agent Leonard had at the time he prepared the January 17, 2023, Social Media Warrant, nor was any difference material. Accordingly, the Defendant cannot satisfy the second or third prongs of *Franks*. On December 22, 2022, Special Agent Leonard queried the National Crime Information Center ("NCIC") for records regarding the Defendant and received a report of the Defendant's Maryland criminal history ("NCIC Report"). Exhibit 1. Cycle 2, the relevant portion of the NCIC Report, is extracted here:

```
=============================== Cycle 002 ===============================
Tracking Number          020005658223
Earliest Event Date      2008-07-25
-------------------------------------------------------------------------
Arrest Date              2008-07-25
Arrest Case Number       PGE0800353120
Arresting Agency          PRINCE GEORGES CNTY PD
Comment(s)               2008-07-26 OTHERS
Charge                   01
        Charge Literal   CDS POSS W/INT TO DIST
              Statute    (1 0233; MD)
              Severity   FELONY
           Disposition   ( ; TURNED OVER TO COMMISSIONER)
-------------------------------------------------------------------------
Court Disposition        (Cycle 002)
Court Case Number        T081461X
Court Agency              PRINCE GEORGES CNTY PD
Charge                   01
        Charge Literal   CDS POSS W/INT TO DIST
              Statute    (1 0233; MD)
              Severity   FELONY
           Disposition   ( 2008-08-22; NOLLE PROSEQUI)
Charge                   02
        Charge Literal   CDS:POSSESS-NOT MARIHUANA
              Statute    (4 3550; MD)
              Severity   MISDEMEANOR
           Disposition   ( 2008-09-24; BOUND OVER)
Charge                   01
        Charge Literal   PWID CDS
              Statute    (CR5602; MD)
              Severity   MD CJIS CODES N/A AT CHARGED TIME
           Disposition   ( ; GUILTY)
Charge                   02
        Charge Literal   POSSESSION OF CDS
              Statute    (CR5601; MD)
              Severity   MD CJIS CODES N/A AT CHARGED TIME
           Disposition   ( ; NOT GUILTY)
-------------------------------------------------------------------------
Sentencing               (Cycle 002)
Sentence Date            2012-03-09
Sentencing Agency
        Charge Literal   PWID CDS
              Severity
Sentence                 Confinement: 01Y06M000DD
Sentence                 Suspended: 00Y00M000D
Sentence                 Probation: 00Y00M000DS
Sentence                 SUPERVISED PROBATION
Sentence                 DEFINITE
Sentence                 Begin Date: 2012-02-23
-------------------------------------------------------------------------
Corrections              (Cycle 002)
Corrections Agency        MD PAR &amp; PROB HDQTRS TERM I BA

Correctional Id Number
    Correction Action    UNKNOWN
Release Date             2012-03-19
Correctional Id Number
    Correction Action    UNKNOWN
```

Special Agent Leonard reviewed the NCIC Report and observed that, according to the report, the Defendant had been charged with "PWID CDS," and the disposition of that charge was "Guilty." The NCIC Report is silent on the whether this state charge was a felony or a misdemeanor, and instead states that the "MD CJIS[7] CODES N/A AT CHARGED TIME." The report did not include a disposition date for this charge but does state that two of the other charges in Cycle 2 had been disposed of in August and September of 2008; the remaining charge did not have a disposition date. The NCIC Report indicated that the sentence associated with Cycle 2 was for an 18-month term of confinement. Special Agent Leonard later relied on the NCIC Report when drafting the affidavit in support of the January 17, 2023, Social Media Warrant, in which he stated:

> I have learned through the course of my investigation that Lester MASSEY . . . is prohibited from possessing firearms due to the following convictions to which he was sentenced to a year or more in prison:
>   • 2008 – Possession with Intent to Distribute Controlled Dangerous Substance – sentenced to 18 months confinement (Maryland); […]

ECF No. 16-1, at 4. There is nothing to suggest that Special Agent Leonard intended to include an inaccurate statement to mislead Judge Quereshi, nor that it was made with reckless disregard for the truth. "*Franks* requires only that the government affiant reasonably believe the allegations to be true." *United States v. Chavez*, 902 F.2d 259, 265 (4th Cir. 1990) (citing *Franks*, 438 U.S. at 165). Special Agent Leonard's belief, based on his review of the NCIC Report, was fully reasonable. The Fourth Circuit has previously recognized that "the limited available evidence

---

[7] Maryland's Criminal Justice Information System (CJIS), like its counterpart in every other State, is a computerized repository of "criminal history record information" (CHRI) governed by the Code of Federal Regulations (28 C.F.R. 20) on which Maryland's statute (Article 27, § 742—755) and regulations (COMAR 12.15.01, .02, .03) are modeled. In Maryland, CJIS is jointly overseen by the Secretary of Public Safety and Correctional Services and the Chief Judge of the Court of Appeals, with the advice of the Criminal Justice Information Advisory Board. For budgetary and administrative purposes only, CJIS Central Repository is housed in the Department of Public Safety                    and                    Correctional                    Services. https://www.courts.state.md.us/sites/default/files/import/access/legal7-5-01.pdf.

suggests that the NCIC database is generally (albeit not always) accurate." *United States v. McDowell*, 745 F.3d 115, 121 (4th Cir. 2014).  Even considering these inaccuracies, NCIC is widely used:

> The pervasive use of NCIC reports throughout the criminal justice system further indicates that such reports may be trusted.  Courts use NCIC reports to make bail and pretrial release decisions; prosecutors rely on NCIC reports at trial to prove that witnesses committed a relevant prior crime; and probation officers use NCIC reports to establish defendants' criminal histories at sentencing.

*Id.* 121-22.

Thus, there is no basis to conclude that Special Agent Leonard's conduct in describing this conviction was intentionally dishonest or reckless, and the Defendant has not made even a preliminary showing of this.

Next, even assuming only for the sake of argument that Special Agent Leonard was reckless in his description of the 2009 conviction (which he was not), the Defendant's request for a *Franks* hearing still fails because there is still sufficient probable cause for the search warrant both due to that conviction itself and, independently, based on the inclusion of the Defendant's second disqualifying conviction—so any omission was immaterial and *Franks* cannot be satisfied. Even if the information about the 2009 conviction was fully excised, the search warrant would still include, among other things, the fact that the Defendant had been convicted of a second offense which carried a sentence of 48 months' imprisonment, 36 suspended, and 36 months of supervised release which disqualified him from possessing firearms under 18 U.S.C. § 922(g)(1), as well.

      a.   *The alleged omissions regarding the Defendant's 2012 conviction do not satisfy the requirements of* Franks*.*

The Defendant also argues for a *Franks* hearing on the grounds that Special Agent Leonard accurately described the Defendant's "2012 – Possession of Controlled Dangerous Substances – sentenced to 48 months' imprisonment, 36 suspended, and 36 months of supervised release

(Maryland)" conviction but omitted that Maryland Possession of a Controlled Substance was a misdemeanor under state law. ECF 16 at 16. The Defendant argues this information was material in the Court's determination of probable cause.

First, there was not a false or misleading statement or omission regarding this conviction. The Defendant even acknowledges the accuracy before arguing that Special Agent Leonard should have specified that this offense was classified for Maryland state-law purposes as a misdemeanor, despite the fact that Special Agent Leonard had already accurately described that the Defendant had received a sentence of 48 months' imprisonment, 36 suspended, and 36 months of supervised, which alone prohibits the Defendant from future possession of firearms and ammunition under 18 U.S.C. § 921(a)(20)(B). Given the length of the maximum penalty, such an offense is by definition qualifying as a crime punishable by imprisonment for a term exceeding one year, and not in any category of misdemeanors that are not prohibitive (*i.e.*, only those punishable by *two* years or less). Accordingly, the Defendant fails to make any "substantial preliminary showing that . . . law enforcement made an omission," at the first step of the *Franks* analysis. *See Haas*, 986 F.3d at 474.

Second, there is no evidence proffered to suggest that Special Agent Leonard omitted information with reckless disregard for the truth about the 2012 conviction. To the contrary, Special Agent Leonard relied on the same NCIC Report discussed above which accurately described the sentence for this charge (similarly without describing it as a misdemeanor), in relevant part:

```
Charge                      02
        Charge Literal  POSSESSION OF CDS
               Statute   (CR5601; MD)
              Severity  MD CJIS CODES N/A AT CHARGED TIME
           Disposition  ( ; GUILTY)
```

Lacking any basis to suggest that Special Agent Leonard should have specified that the offense was a state-level misdemeanor—and also given that that makes no difference whatsoever to the charge at issue—the Defendant cannot show any recklessness as to the representation or meet any burden under *Franks*. Any "[m]ere conclusory statements" about the affiant's intent are insufficient to warrant a *Franks* hearing. *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999). As discussed above, Special Agent Leonard's reliance on NCIC was also reasonable. Accordingly, the Defendant fails to make a "substantial preliminary showing that . . . law enforcement made [an] omission 'knowingly and intentionally, or with reckless disregard for the truth,'" at the second step of the *Franks* analysis. *See Haas*, 986 F.3d at 474.

Third, the Defendant has failed to show that the information about the severity of the conviction was material to the determination of probable cause. Special Agent Leonard's accurate description of the 2012 sentence showed that this conviction, regardless of whether it was a state-law felony or misdemeanor, prohibited the Defendant from possessing firearms and ammunition under 18 U.S.C. §§ 922(g)(1) and 921(a)(20)(B). Therefore, the Defendant fails to make a "substantial preliminary showing that . . . the inclusion of the omitted evidence in the affidavit would have defeated its probable cause," at the third step of the *Franks* analysis.

Thus, because there was no reason to include the information allegedly omitted about the 2012 conviction, and even if it had been included, the statement in the affidavit regarding the sentence remained accurate, the Defendant cannot satisfy the requirements of *Franks*. Having failed to make a substantial preliminary showing at any step of the *Franks* analysis, the Defendant fails to provide a basis for a *Franks* hearing.

## CHALLENGES TO THE JULY 31, 2023, TELEPHONE WARRANTS

The Defendant argues that the July 31, 2023, Telephone Warrants should be suppressed on the grounds that they rely on the fruits of the January 17, 2023, Social Media Warrant, that they were over-broad, and that that they contain the same above-discussed criminal history for the Defendant, and to the extent they rely on an allegedly unconstitutional stop and seizure of the Defendant on May 16, 2023.

As discussed above, the January 17, 2023, Social Media Warrant was valid, and the evidence revealed by that search is admissible.  Likewise, the same analysis regarding the Defendant's criminal history applies here.

The Defendant's conclusory claim about the warrant's overbreadth or lack of nexus between the crime charged and data sought, ECF No. 16 at 17-18, is similarly unsupported.[8]  The Defendant fails to provide any explanation remotely establishing how such a violation occurred or why the actions of law enforcement fall outside of what is permissible under the Fourth, Fifth, and Sixth Amendments.  The warrants sought communications and other information specifically linked to the charged offense and the Defendant himself, and there is no basis for suppression in this regard.

---

[8] Case law, the Federal Rules of Criminal Procedure, and this Court's Local Rules mandate that motions be supported by the appropriate facts and authorities.  The Supreme Court and Fourth Circuit clearly prescribe that "[t]he proponent of a motion to suppress has the burden of establishing that his own . . . rights were violated by the challenged search or seizure."  *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978); *see also United States v. Dickerson*, 655 F.2d 559, 561 n.1 (4th Cir. 1981) (same).  Federal Rule of Criminal Procedure 47(b) states that "[a] motion must state the grounds on which it is based and the relief or order sought."  Moreover, this District's Local Rule 105 instructs litigants that "[a]ny motion and opposition to a motion shall . . . be accompanied by a memorandum setting forth the reasoning and authorities in support of it."  U.S. District Court of Maryland Local Rules (July 1, 2023).

Finally, the Defendant's challenge based on reliance on an allegedly unconstitutional stop and seizure of the Defendant and the Defendant's accompanying statements is similarly without merit.

In July 2023, ATF Special Agent Wadsworth queried a law enforcement database for information regarding the Defendant and learned, for the first time, that on May 16, 2023, the Defendant appeared to have been arrested for operating a vehicle without insurance following a traffic stop for a tinted front windshield.  Special Agent Wadsworth then reviewed an underlying impound report and arrest report for this incident.  These reports reflected, in part, that the Defendant had provided the telephone number associated with the -3110 Phone and his apartment's address to the officers during this traffic stop.  This information was included in the July 31, 2023, Telephone Warrants for the limited purpose of helping attribute the phone number/address information to the Defendant; these are not statements the Government seeks to use going forward, and there is no valid basis for suppression on the facts presented here.

Furthermore, on their face the statements fit squarely into the "booking exception" to the need for *Miranda* warnings.  The "booking exception" permits law enforcement to collect personal information from a person in custody for administrative purposes, such as preparing law enforcement paperwork.  *See, e.g.*, *Pennsylvania v. Muniz*, 496 U.S. 582 (1990); *United States v. D'Anjou*, 16 F.3d 604, 608–09 (4th Cir. 1994); *United States v. Allen*, 13 F.3d 105, 109-10 (4th Cir. 1993); *United States v. Taylor*, 799 F.2d 126, 128 (4th Cir. 1986).

Specifically, regarding the Defendant's providing his telephone number, "courts in the Fourth Circuit have held that the Routine Booking Question Exception applies to biographical data that goes beyond the very basic questions regarding one's name, address, date of birth, etc." *United States v. Malone*, No. 3:22CR182 (RCY), 2023 WL 3305167, at *6 (E.D. Va. May 8, 2023) (citing

*United States v. Elsheikh*, 578 F. Supp. 3d 752, 779 (E.D. Va. 2022), for its "holding that the Routine Booking Question Exception applies to the gathering of biometric data because the collection of such data 'served administrative goals, such as identifying and tracking detainees, as well as other national security interests'" and *United States v. Sanmartin*, No. 5:15-CR-328, 2016 WL 4506990, at *2 (E.D.N.C. Aug. 26, 2016), for its "holding that questions about the defendant's gang affiliation fell under the Routine Booking Question Exception because they 'were part of a standard booking procedure aimed, in part, at addressing safety concerns'") .

Special Agent Wadsworth's mention of the Forest Heights information based on her review of the reports was reasonable, as was her inclusion of the Defendant's answers to presumptively lawful administrative questions.  Accordingly, there is no basis for suppression.

### <u>CHALLENGES TO THE AUGUST 10, 2023 RESIDENTIAL WARRANT</u>

On August 10, 2023, Chief U.S. Magistrate Judge Sullivan issued a warrant to search the Defendant's residence in Oxon Hill, Maryland. The warrant specifically authorized the search of the residence, as well as the search of electronic evidence on the Defendant's cell phones, among other devices.  ECF No. 16-3 at 5-7.  On the morning of August 11, 2023, law enforcement executed the warrant at the Defendant's residence.

The Defendant objects to the August 10, 2023, Residential Warrant on many of the previously-discussed grounds, none of which has merit.

The Defendant's objection that the warrant fails to establish a nexus to the residence fails because, for example, the warrant details how the Defendant provided an address in the immediate proximity of his residence specifically to facilitate a firearms transaction.  *See* ECF No. 16 at 18-19.  Specifically, the warrant includes a description of how the Defendant negotiated the sale of a Beretta APX Carry firearm over social media to a third party, and, once the deal was agreed upon,

directed the purchaser to an address that is approximately 700 feet from the Defendant's residence and within the same building complex. ECF No. 16-3 at 16-19. The warrant also includes how the affiant, based on physical surveillance, a review of street maps, and training and experienced believed this was done in effort to avoid detection by law enforcement and minimize the Defendant's risk of arrest.

The warrant separately establishes probable cause to support the belief that Defendant's phones would be in the Defendant's residence and the phones would contain evidence of the Defendant's offenses. ECF No 16-3 at 7, 16. The warrant includes a lengthy discussion of how the Defendant had previously utilized one of his cell phones to communicate telephonically with an associate to advertise firearms for sale, negotiate firearms transactions, and facilitate the transactions. ECF 16-3 at 20-26. Finally, the warrant laid out location data associated with the Defendant's cell phones, as well as physical surveillance and record checks, tying the Defendant to his residence. ECF 16-3 at 26-29. Lastly, the warrant articulates additional specific probable cause to support the warrant's request to search the Defendant's cell phones if they were recovered in the Defendant's residence. ECF 16-3 at 31-36.

The warrant establishes a sturdy connection between the Defendant, the Defendant's conduct, the Defendant's cell phones and the Defendant's residence. Probable cause to search had been established, and there was a substantial basis to reach this conclusion.

Next, the Defendant objects that no explanation was provided for why this evidence would be found in the residence. This is incorrect. As noted above, the warrant includes five pages of additional probable cause to search the Defendant's cell phones (and other devices) for electronic evidence of his firearms crimes. ECF No. 16-3 at 31-36. The warrant also includes a three-page discussion of the affiant's request to obtain biometric characteristics as part of the warrant and how

that would facilitate the seizure of electronic evidence.  ECF No. 16-3 at 29-31.  The warrant also includes a discussion of the affiant's training and experience that informed her belief that relevant evidence would be recovered in the residence and devices therein.   ECF No. 16-3 at 3-6.

Finally, the Defendant alleges that the scope of the warrant was later violated, when the Defendant's devices were searched pursuant to the August 10, 2023, Residential Warrant.  As just noted above, the warrant fully contemplated a search of the Defendant's cell phones (and other devices) and this search was supported by probable cause.  The affidavit also specifically included a discussion of the search of digital devices.  *See* ECF No. 16-3 at 36-40.  Also, Attachment B encompassed the search for electronic records and electronic communications related to the alleged violations, identified the two cell phones by telephone number later recovered from the Defendant, listed the types of electronic records sought, and provided guidance on how the search may be conducted.  *See* ECF No. 16-3 at 5-9.

This warrant for the Defendant's residence and any electronic devices within was particular, appropriately narrow, and amply supported by probable cause.

### CHALLENGES TO THE SEPTEMBER 15, 2023 SOCIAL MEDIA WARRANT

The Defendant argues that the September 15, 2023, Social Media warrant should be suppressed on the grounds that it relies on the warrants that came before it. As discussed above, each of those warrants are valid.  This affidavit continues to not include the Defendant's desired clarification regarding his criminal history, however, that omission is no justification for suppression nor a *Franks* hearing.  The Defendant also objects to the possession of personal data, however that ignores the reality of the storage of electronic information.  Unlike a file cabinet or other physical locations, in the context of electronic evidence, "[e]ven the most conventional 'files' . . . are not maintained like files in a file cabinet, in discrete physical locations separate and distinct

from other files . . . They are in fact 'fragmented' on a storage device." *United States v. Ganias*, 824 F.3d 199, 212-13 (2d Cir. 2016). Also, "[p]reservation of the original medium or a complete mirror may be necessary in order to safeguard the integrity of the evidence that has been lawfully obtained or to authenticate it at trial" or to afford the defendant access to the forensic copy." *Ganias*, 824 F.3d at 215. The government is not required to only extract certain types of data from digital devices, it is required to be reasonable how it conducts its search. The Defendant does not give any basis for their allegation that the execution of this warrant being unreasonable or unconstitutional.

### V.   The Good Faith Exception Applies Here.

Finally, even assuming that any of the above-described warrants could be deemed insufficiently particular, overbroad, or unsupported by probable cause, suppression would still be improper because the agents relied upon them in good faith. *See generally United States v. Leon*, 468 U.S. 897, 922-23 (1984) (holding that where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant," the Fourth Amendment exclusionary rule does not apply).

The Fourth Circuit has held that the good faith exception applies to otherwise deficient search warrants except in "egregious cases" such as "when 'the issuing magistrate wholly abandon[s] his judicial role' or when the warrant issued is 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *United States v. Qazah*, 810 F.3d 879, 886-87 (4th Cir. 2015) (quoting *Leon*, 468 U.S. at 922-23)). The Fourth Circuit also held that "in the ordinary course, the exclusion of evidence is not the proper remedy." *Id.*

The good-faith exception applies in most cases, except those where the affidavit provides only minimal, vague information. *Cf. United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) ("We find that the good-faith exception to the exclusionary rule should not apply in this case due to the 'bare bones' nature of the affidavit[.]").  Indeed, "[s]earches pursuant to a warrant . . .  rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994) (internal quotation marks omitted).  At bottom, if "a reasonably trained officer would" not "have known that the search was illegal despite the magistrate's authorization," *Leon*, at 922 n.23, then suppression is improper.  *See also Herring v. United States*, 555 U.S. 135, 144 (2009) (finding that to trigger the exclusionary rule, law enforcement "conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system").

No such "egregious" circumstances or "minimal, vague information" are present here.  No aspects of the affidavits or warrants are deficient, and in each instance, even if any had been, it was not unreasonable for law enforcement to rely in good faith on them.  Similar warrants have been frequently upheld by courts, including the Fourth Circuit.  *See, e.g.*, *Williams*, 592 F.3d at 520.

Accordingly, the Court should deny the Defendant's Motions to suppress the warrants on these grounds.

## DEFENDANT'S MOTION TO SUPRESS STATEMENTS

**I.      The Defendant's Motion Regarding the May**

The Defendant's requests to suppress the statements he made as part of that traffic stop and/or any fruits of a search on that date should be denied as moot.  *See* ECF No. 18 at 2-3; ECF

No. 17 at 2-3.  As noted, those statements were referenced in the residential search warrant affidavit only for the limited purpose of helping attribute the phone number/address information to the Defendant.  Nor was anything seized as part of that traffic stop that the government is aware of that could be used at trial.  Except in the event that the Defendant intends to claim that the residence where he was found and living at the time of the search warrant was not his residence, or that the phone seized from him was not his phone—in which case his previous admissions on those points could become relevant in rebuttal—the government has no intention of introducing information from that traffic stop at trial in this case, and any such issue could be address through a motion in limine.  Statements or evidence from a traffic stop that was not part of the criminal investigation and are not part of the government's anticipated evidence going forward are not appropriate subjects for ruling on a motion to suppress, even if there were any basis for suppression on the merits, which the Defendant has not shown.

## II.      The Defendant's August 11, 2022 Post-*Miranda* Statements are Admissible.

During the execution of the residential search warrant, the Defendant was placed in handcuffs, advised of his *Miranda* rights, and interviewed in the Defendant's residence.  The Fifth Amendment privilege against self-incrimination provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.  In *Miranda v. Arizona*, the Supreme Court established a prophylactic, procedural mechanism that safeguards a defendant's Fifth Amendment privilege when that defendant is subject to custodial interrogation.  384 U.S. at 467-74, 478-79; *Dickerson v. United States*, 530 U.S. 428, 435 (2000).  Specifically, in *Miranda*, the Supreme Court held that before conducting a custodial interrogation of a suspect, law enforcement officials must inform the suspect, in substance, that he has the right to remain

silent, that his statements may be used against him at trial and that he has the right to an attorney during questioning.  384 U.S. at 478-79.

In this case, assuming for the sake of argument that the Defendant was in custody for the interview, the officer properly advised the Defendant of his *Miranda* rights while the search of the Defendant's home was on-going and, indeed, before any decision regarding arrest had been made. The officer informed the Defendant that he had a right to remain silent ("You have a right to remain silent.").  The officer informed the Defendant that his statements could be used against him at trial ("Anything you say could be used against you in court, in the event that you are charged.").  The officer informed the Defendant that he had a right to an attorney during questioning ("You have a right to have an attorney present with you during questioning.").  The officer advised the Defendant that the government would appoint an attorney for him if the Defendant could not afford one ("If you cannot afford one, one will be provided at no cost"). The officer advised the Defendant that the Defendant could end the questioning at any point ("If you decide to give a statement, you always have the right end questioning at any time").  Exhibit No. 2.[9]

A defendant may waive his rights and voluntarily submit to custodial interrogation.  To be valid, the waiver "need not be explicit, but may be inferred from all the circumstances."  *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984).  "Waiver need not be express, but may be implied from the defendant's actions and words."  *United States v. Cardwell*, 433 F.3d 378, 389 (4th Cir. 2005).  A defendant may waive his *Miranda* rights by indicating his understanding of the rights and being willing to answer questions from law enforcement. *Id.*; *Frankson*, 83 F.3d  at 82 ("[A] defendant's . . . willingness to answer questions after acknowledging his *Miranda* rights is

---

[9] Exhibit 2 is 3 audio files, narked Exhibit 2-1, Exhibit 2-2 and Exhibit 2-3, capturing the Defendant's interview and arrest. The referenced portion can be found in Exhibit 2-1.

sufficient to constitute an implied waiver.") (internal quotation marks omitted).  Moreover, it is well established that "'absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion' as to any subsequent, postwarning statement.  Rather, 'the relevant inquiry is whether, in fact, the second statement was also voluntarily made.'"  *United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005) (citing *Oregon v. Elstad*, 470 U.S. 298, 314 (1985); *see also United States v. Khweis*, 971 F.3d 453, 463 (4th Cir. 2020) (same).

The facts in this case establish that the Defendant clearly understood and waived his *Miranda* rights voluntarily.  After the officer advised him of each right, the Defendant made a statement affirming his understanding.  These statements of assent provide clear proof that the Defendant understood his *Miranda* rights.

Not only did the Defendant understand his *Miranda* rights, he voluntarily waived them by answering the officer's questions.  *See Cardwell*, 433 F.3d 389.  After the officer advised the Defendant of his rights, the officer and the Defendant engaged in a conversation that covered the Defendant's purchase and possession of a firearm receiver, the Defendant's prior attempts to manufacture a rifle, the Defendant's recent use of firearms, that the Defendant was unable to purchase a firearm, and that the Defendant was not permitted to possess a firearm.  Because there is no indication or even an allegation that these statements were made involuntarily—or that any statements were made based upon deliberate coercive or improper tactics—the Defendant's statements are admissible.  The Court should therefore deny his motion to suppress, ECF No. 18.

### DEFENDANT'S MOTION TO SUPRESS FRUITS OF WARRANTLESS SEARCHES AND SEIZURES

The Defendant alleges that he was the subject of two warrantless searches in this case, the traffic stop and the August 11, 2023, search of the Defendant's cell phones. As discussed above,

the traffic stop was outside of the scope of this case and the search of the Defendant's was authorized by the August 10, 2023 Residential Search Warrant.

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT UNDER THE SECOND AMENDMENT

The Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him under *NYSRPA, Inc. v. Bruen*, 597 U.S. 1, 80-81 (2022).  ECF No. 19. While later acknowledging that the Fourth Circuit affirmed that Section 922(g)(1) is facially constitutional, *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024), the Defendant has persisted with his as-applied challenge.  On June 21, 2024, the Supreme Court issued its decision in *United States v. Rahimi*, 2024 WL 3074728 (2024), which upheld the constitutionality of 18 U.S.C. § 922(g)(8) because the defendant in that action, at least as applied to him, could not demonstrate the law was unconstitutional.  While the Supreme Court in *Rahimi* upheld the validity of 18 U.S.C. § 922(g)(8) as-applied to the defendant in that case, the decision supports the Government's position here that 922(g)(1) is constitutional as applied to the Defendant as well.  This is so for a variety of reasons.

First, *Rahimi* reiterated what the Supreme Court first recognized in *Heller* and later re-affirmed in *Bruen*, which is that "prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"  2024 WL 3074728 at *10 (citing *District of Columbia v. Heller*, 554 U.S. 570, 626, 627, n.26 (2008)); *accord McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *see also NYSRPA, Inc. v. Bruen*, 597 U.S. 1, 80-81 (2022) (Kavanaugh, J., concurring) (same).  This should end the matter here.  The Supreme Court has repeatedly affirmed that laws like Section 922(g)(1) are "presumptively lawful" because they are consistent with this Nation's historical tradition of firearm regulations.  *Id.*  Because *Rahimi* does not retreat from this position but in fact re-affirms it, this means the Defendant's motion should be denied.

Second, *Rahimi* clarifies the kind of historical analogues that suffice to uphold Section 922(g)(8), and those analogues apply with equal force to confirm the validity of Section 922(g)(1). For example, the Court evaluated the surety laws of the 1700s and early 1800s, and noted that they "authorized magistrates to require individuals suspected of future misbehavior to post a bond," and if they failed to do so or broke the peace, they could be jailed or forfeit the bond.  2024 WL 3074728 at *8.  These laws were designed to "prevent[] violence before it occurred."  *Id.*  The Court also analyzed the "going-armed laws" which punished those who had menaced others with firearms.  *Id.* at *9.  Just like these laws were sufficient to uphold 922(g)(8), they are also relevantly similar to 922(g)(1).  The felon in possession law is precisely calibrated to prevent firearm possession of those "suspected of future misbehavior."  Moreover, the Court in *Rahimi* made a point to chide the lower court for requiring a "twin."  *Id.* at *11.  In this way, while the Defendant's arguments are based on his claim that there is no 1:1 twin for 922(g)(1) from the Founding Era, *Rahimi* makes clear that such similarity is simply not required.  Rather, the surety and going-armed laws are more than sufficient to demonstrate that the prohibition in Section 922(g)(1) is also consistent with our historical tradition of firearm laws.

Third, *Rahimi* indicated that the "why" and the "how" are important to the historical tradition analysis, 2024 WL 3074728 at *6, and this analysis surely supports the prohibition in 922(g)(1).  As detailed above, the Founding Era surety laws aimed to put restrictions on gun possession for those who posed a risk of "future misbehavior" and those who would pose a threat of danger to others in the community.  This is precisely the "why" behind 922(g)(1).  Specifically, the Fourth Circuit held that Congress enacted 922(g)(1) because felons are among the class of individuals who "pose a heightened danger of misusing a firearm."  *United States v. Mahin*, 668 F.3d 119, 122 (4th Cir. 2012).  Similarly, the "how" of these laws is also relevantly similar to

922(g)(1) in that, under the surety laws, violators could subject to ex ante restrictions and imprisonment for subsequent violations. It is the same for felons: they are barred from firearm possession upfront simply by virtue of their disqualifying conviction, and prison can follow for a Section 922(g)(1) prosecution.

Further, it is important to note that both of the Defendant's convictions that carried disqualifying sentences were drug charges, and at the time of the currently charged conduct, Massey was not only in possession of hundreds of rounds of ammunition but also 17 grams of methamphetamine, with more than 10 grams with 96% purity. It has been long established that firearms and illegal drugs pose a particular danger to society. *See, e.g.*, *Johnson v. United States*, 576 U.S. 591, 642 (2015) (Alito, J., dissenting) ("Johnson's conduct posed an acute risk of physical injury to another. Drugs and guns are never a safe combination."); *United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010) ("A handgun . . . has been deemed 'a tool of the drug trade because it is easy to conceal yet deadly.' More specifically, a drug trafficker is much more likely to utilize a handgun—as opposed to a rifle or long gun—due to size and concealability."); *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997) ("The Sentencing Commission recognized that drugs and guns form a lethal combination that can lead to violence. . . . Application Note 3 [to U.S.S.G. § 2D1.1(b)(1)] explains that th[e] 'enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.'"); *United States v. Samuel*, No. CR ELH-16-117, 2020 WL 6826553, at *9 (D. Md. Nov. 20, 2020) (noting in the compassionate release context that "the offenses are serious; drugs and guns are a dangerous combination"); *United States v. Lunsford*, No. 2:10-CR-00182, 2011 WL 145195, at *6 (S.D. W. Va. Jan. 18, 2011) ("As the Government correctly notes, there is a 'settled connection between drugs and firearms,' . . . and firearms are considered 'tools of the trade' in the illegal drug business. . . . Most

importantly, it is well-established in the Fourth Circuit that 'drugs and guns form a lethal combination that can lead to violence' . . . ."), *aff'd*, 470 F. App'x 184 (4th Cir. 2012).  In this way, the "why and how" of Section 922(g)(1) are supported by the analysis in *Rahimi*.

Fourth, the Court in *Rahimi* makes clear that a class-wide prohibition on gun possession (like the one in 922(g)(1)) may be consistent with the Second Amendment.  Specifically, the Court noted that, while the 922(g)(8) analysis was focused on the particularized findings necessitated under 922(g)(8)(C)(i), "the Court does not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse."  2024 WL 3074728 at *3.  In this way, to the extent the Defendant might argue that *Rahimi* supports his position, this caveat indicates that it does not.  In fact, 922(g)(1) and (g)(8) have more in common than they are distinct.  While the Court noted that a 922(g)(8) defendant is afforded notice and an opportunity to be heard before a deprivation of the right to possess a gun, a 922(g)(1) also is afforded a full panoply of due process rights in the prior criminal proceeding that resulted in his felony status before gun possession can be barred.  Similarly, while a person subject to 922(g)(8) has the opportunity to seek to dissolve the order and thereby regain the opportunity to possess a gun, a convicted felon may also seek to have his civil rights restored and therefore take a prior conviction out of prohibiting status under 18 U.S.C. § 921(a)(20).  In this way, *Rahimi*'s analysis, while focused on particularized findings required for 922(g)(8), nevertheless still supports a broader prohibition against felons as a class as found in 922(g)(1).

Based on the foregoing, the Government respectfully requests that the Court deny this motion to dismiss.

**RESPONSE REGARDING REQUEST FOR NOTICE OF RULE 404(b) EVIDENCE**

The government respectfully submits that the Defendant's request for notice of Rule 404(b) evidence, ECF No. 18, is premature.  No trial date has yet been set.  According to District practice, the government intends to provide notice of any Rule 404(b) evidence that it intends to introduce at trial in due course, before motions in limine deadlines approach before trial.  The government will adhere to any Court-ordered deadline for such productions if/when a trial date is set, as well.

## **CONCLUSION**

For the reasons above, the Government respectfully submits that the Defendant's Motions should be denied.]

Respectfully submitted,

Erek L. Barron
United States Attorney

By:      _____/s/_____
Nicholas Potter
Elizabeth Wright
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 2, 2024 a copy of the foregoing response and proposed order was filed to the CM-ECF system of the United States District Court for the District of Maryland for electronic delivery to all counsel of record.

_____/s/_____
Nicholas Potter
Assistant United States Attorney